UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
HARTFORD DIVISION

| | |
|---|---|
| In re: <br><br> MIGUEL ARTURO FRANCO, JR., <br><br> Debtor. <br><br> SUTHERLAND ASSET I, LLC, <br><br> Plaintiff, <br><br> v. <br><br> MIGUEL ARTURO FRANCO, JR., <br><br> Defendant. | Chapter 7 <br> Case No.: 17-21913-JJT <br><br><br> Adv. Proc. No.: 18-02019-JJT |

**SECOND AMENDED COMPLAINT OBJECTING
TO DISCHARGE AND DISCHARGEABILITY**

Pursuant to Fed. R. Civ. P. 15(a)(2), made applicable to this adversary proceeding by Fed. R. Bankr. P. 7015, plaintiff Sutherland Asset I, LLC (the "Plaintiff"), by and through its undersigned counsel, hereby files this Second Amended Complaint objecting to the discharge of the Debtor/Defendant, Miguel Arturo Franco, Jr. (the "Debtor") and to the dischargeability of the Plaintiff's debt, and complains against the Debtor as follows:

**JURISDICTION AND VENUE**

1.     This adversary proceeding arises in and relates to the bankruptcy case captioned *In re Miguel Arturo Franco, Jr.*, United States Bankruptcy Court, District of Connecticut, Case No.: 17-21913-JJT (the "Bankruptcy Case").

2. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) and § 157(b)(2)(J) because it is a core proceeding to determine whether a debtor is entitled to a discharge and the dischargeability of a particular debt.

3. Venue properly lies in this District under 28 U.S.C. § 1409(a) because this adversary proceeding is related to the Bankruptcy Case, which is pending in this District, and arises under title 11 of the United States Code, 11 U.S.C. § 701, *et seq.*

## PARTIES

4. Plaintiff, Sutherland Asset I, LLC is a creditor in the Bankruptcy Case, and is a Delaware limited liability company with an address of 1675 South Street, Suite B, Dover, DE 19901.

5. Defendant/Debtor, Miguel Arturo Franco, Jr., is the Debtor in the Bankruptcy Case, and is an adult individual with a residence at 7 Berkeley Lane, East Hartford, CT 06118.

## ALLEGATIONS

### The Bankruptcy Case

6. On December 19, 2017 (the "Petition Date"), the Debtor filed a voluntary petition under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code"). That same day the Debtor filed his Schedules ("Schedules"), Statement of Financial Affairs ("SOFA") and Chapter 7 Statement of Current Monthly Income ("SCMI"). A true and accurate copy of the Schedules, SOFA and SCMI[1] is attached hereto as <u>Exhibit A</u>. In his filing, the Debtor declared that the disclosures in the Schedules, SOFA and SCMI were true and correct under the pains and penalties of perjury.

---

[1] The SCMI contains no information about the Debtor's monthly income or expenses.

7. The Debtor further affirmed the accuracy and completeness of these disclosures under oath at his §341 Meeting of Creditors and during his deposition in this action. Indeed, the Debtor has stated on numerous occasions, while under oath, that he prepared his bankruptcy disclosures with the assistance of counsel and that he reviewed these disclosures prior to their being filed by his counsel.

8. The Plaintiff holds a claim against the Debtor stemming from a Commercial Guaranty granted by the Debtor in favor of the Plaintiff's predecessor-in-interest. On or around December 14, 2015, Judge Dubay of the Connecticut Superior Court (the "Superior Court") entered a deficiency judgment against the Debtor in favor of the Plaintiff in the amount of $155,261.64 (the "Deficiency Judgment").

### The Debtor's Membership Interests and Income

9. In his Schedule A/B, the Debtor represented that on the Petition Date he did not hold an interest in unincorporated businesses, including in any limited liability companies. *See* Schedule A/B, No. 19.

10. However, on the Petition Date, the Debtor, who is a sophisticated businessmen, held membership interests in various limited liability companies including, but not limited to, Piolin Jr., LLC, Piolin Restaurant II, LLC ("Piolin II"), Franco Realty Group, LLC ("Franco Realty") and 621 Burnside, LLC.

11. Further, the Debtor is the managing member of Piolin II and has admitted, under oath, to personally preparing and filing the articles of incorporation for this entity with the Connecticut Secretary of State.

12. The Debtor did not disclose the value of these foregoing membership interests on his Schedules or SOFA despite the fact that at least two (2) of these entities, Piolin II and Franco

Realty, were operating businesses which generated tens of thousands of dollars in revenue per year at the time that he commenced the Bankruptcy Case.

13. In his SOFA, the Debtor represented that he received no income from employment or from operating a business during the year that the Bankruptcy Case was filed or the two (2) previous calendar years, i.e., 2015, 2016 and 2017. *See* SOFA, No. 4. Contrary to this representation, made under oath, the Debtor generated thousands of dollars in monthly income, including from his wages, rental income, payments in kind and draws from his various companies and businesses during that very period.

14. In fact, when questioned by counsel for the Plaintiff during his deposition in this action Debtor admitted that: (i) he owned and operated the Piolin Jr. restaurant in East Hartford, Connecticut, from which he generated income in 2015 and 2016, (ii) he was the "manager" of the Beso Lounge and Restaurant, which was nominally owned by his ex-wife and from which he was paid on an hourly basis; and (iii) he worked at the "Piolin Jr. Café" which was similarly a restaurant business owned by his ex-wife and for which work he was compensated.

15. Additionally, the Debtor generated thousands of dollars per year in 2015, 2016 and 2017 in income through his real estate brokerage firm Franco Realty Group LLC. Specifically, the Debtor testified at his January 24, 2018 §341 Meeting of Creditors that he earned commissions from the sale of properties through Franco Realty. He further testified that he deposited such commissions into Franco Realty's bank account held at Bank of America.

16. However, the Debtor concealed the true nature of this bank account during his §341 Meeting, and thereafter, by holding this account out to the Trustee and his creditors as an "escrow account" which he claimed was used to hold his client's deposits despite knowing this was not true.

17. In fact, despite falsely claiming that this account was an "escrow account" for client funds, the Debtor used the monies in Franco Realty's Bank of America account to pay his personal and household expenses, including for his family's cell phone bills, utilities and mortgage payments. Additionally, one day prior to the Petition Date, the Debtor paid his mortgage from the Franco Realty Bank of America account. The Debtor further withdrew five-hundred dollars ($500.00) in cash two (2) days after the Petition Date from this purported "escrow account".

18. In fact, the Debtor did not list the Franco Realty Bank of America account on his Schedule A/B, or anywhere in his bankruptcy disclosures. *See* Schedule A/B No. 17. Instead, he disclosed the existence of this account only after being questioned by Plaintiff's counsel at the §341 Meeting of Creditors.

19. Moreover, the Debtor falsely represented on his SOFA that he received no other income, including rental income or money collected from lawsuits, during the year the Bankruptcy Case was filed or the two (2) previous calendar years. *See* SOFA, No. 5.

20. In fact, the Debtor received hundreds of dollars per month in rental income generated from residential rental properties that he owned. Therefore, the Debtor's representation that he received no rental income during the year the Bankruptcy Case was filed, or the two (2) previous calendar years was false.

21. Furthermore, the Debtor initiated a summary process action against his tenant Miguel Gomez and others, in the Superior Court styled *Franco Jr. v. Gomez et al.*, approximately two (2) months prior to the Petition Date in order to collect unpaid rents. Not only did the Debtor fail to disclose this lawsuit on his SOFA [*see* SOFA No. 9], but he concealed the fact that he settled that action, mere weeks prior to the Petition Date, and entered into a

stipulation with Mr. Gomez, whereby the Debtor would receive $200.00 per month in overdue rents beginning in December 2017, i.e., the month he commenced the Bankruptcy Case, until January 2019. *See* Schedule A/B No. 30

22.     In fact, when the Debtor was questioned by the Trustee during the §341 Meeting of Creditors regarding whether he was owed money by anyone, the Debtor falsely responded, "No sir".  The omission from his SOFA and the subsequent concealment from the Trustee and his creditors of the pre-petition Gomez lawsuit and the settlement payments he was owed on account thereof were false oaths.

23.     Further, the Debtor had use of and control over a late model pickup truck that was purportedly leased by his father, but which was "given" to the Debtor within months of the lease being signed.  The Debtor admitted at his deposition in this action that the lease payments for this truck are made by the Debtor's brother.  However, the Debtor did not list said payments, from which he derives a substantial benefit, as income on his Schedules or SOFA or disclose this late model truck on his Schedule A/B as required. *See* Schedule A/B No. 3.

24.     In his Schedule E/F, the Debtor falsely lists the Plaintiff's claim as disputed. *See* Schedule E/F, No. 4.20.  As stated more fully above, in 2015, the Superior Court entered the Deficiency Judgment against the Debtor in favor of the Plaintiff.  Since entry of the Deficiency Judgment, any such appeals period has run and the Deficiency Judgment is final and binding on the Debtor.  Accordingly, his characterization of the Deficiency Judgment as "Disputed" is false.

25.     In his Schedule A/B, the Debtor failed to disclose a bank account he has with Navy Federal Credit Union. *See* Schedule A/B, No. 17.  Indeed, the Debtor admitted under oath at his §341 Meeting of Creditors that this account had been open for nearly two (2) decades prior to the Petition Date.

26.  In his Schedule A/B, the Debtor represented that he held no licenses, including liquor licenses and professional licenses. *See* Schedule A/B, No. 27.

27.  In fact, the Debtor omitted the existence of his real estate broker license, which he uses to operate Franco Realty and generate thousands of dollars in annual income, which income, as previously stated, was used for his personal expenses and was omitted from the Debtor's Schedules and SOFA. Further, the Debtor had, and continues to have a liquor license granted to him by the State of Connecticut in connection with one of his father's restaurants located in Hartford. Therefore, the Debtor's representations that he held no licenses on the Petition Date was false.

28.  The Debtor also represented that did not hold an interest in any insurance policies. *See* Schedule A/B, No. 31.

29.  However, at the January 24, 2018 §341 Meeting of Creditors the Debtor testified, only after being questioned by counsel for the Plaintiff, that he did in fact hold various interests in insurance policies, including health, disability and homeowner's insurance. Accordingly, the Debtor's representations that he did not hold an interest in insurance policies was false.

30.  In his Schedule E/F, the Debtor lists his father, Miguel Franco, Sr., as a creditor with a claim in the amount of $90,000.00 pursuant to an "Equipment and Business Purchase Note." *See* Schedule E/F, No. 4.18. In his SOFA, the Debtor represented that, within the one (1) year period prior to the filing of the Bankruptcy Case, he did not make a payment on a debt he owed anyone who was an insider. *See* SOFA, No. 7. However, the Debtor's father was paid approximately three thousand dollars ($3,000.00) on account of the foregoing agreement.

31.  In his SOFA, the Debtor represented that he gave no gifts in excess of $600.00 in value to anyone during the prior two (2) years. *See* SOFA No. 13.

32. However, the Debtor testified at his deposition in this action that in 2017, i.e. within a year of the Petition Date, he gifted his 2006 BMW 330i, which he valued on his Schedule A/B as being worth $2,850.00, to his teenage son. The omission of this gift was a false oath.

### The Debtor's Transfer of the Piolin Jr. Restaurant

33. The Debtor testified at his deposition in this action that in or around 2016, at a time he was being pursued by his creditors, including Plaintiff, he ceased operating the Piolin Jr. restaurant located at 860 Main Street, East Hartford, Connecticut. This restaurant business was nominally titled in the name of Piolin Jr., LLC, of which the Debtor was the sole member.

34. The Debtor testified at his deposition in this action that he closed the Piolin Jr. restaurant because he "owe[ed] a lot of money", despite the fact that this business was, by the Debtor's own admission, "doing fine" financially.

35. Indeed, the Debtor further testified that following his closure of this restaurant, the owner of the 860 Main Street building and the Debtor's ex-wife began to operate a restaurant and nightclub at this location under the name Beso Lounge and Restaurant. Further, the Debtor remained intimately involved in the operations of this restaurant business as its "manager" and received income on account of his services.

36. The Debtor continued to work for the Beso Lounge and Restaurant purportedly until early 2019.

37. The Debtor also testified that his ex-wife sold her interest in the Beso Lounge and Restaurant for nearly ten thousand dollars ($10,000.00) sometime in 2019.

38. Plaintiff reserves the right to allege and assert additional false oaths based upon the Debtor's testimony at the trial of this matter.

## COUNT I
### (Objection to Discharge Pursuant to 11 U.S.C. § 727(a)(4)(A) – False Oaths)

39. The Plaintiff repeats and realleges the allegations in the preceding paragraphs as if the same were set forth more fully herein.

40. Section 727(a)(4)(A) of the Bankruptcy Code provides that a debtor shall not receive a discharge if the debtor knowingly and fraudulently, in, or in connection with, the bankruptcy case, made a false oath or account.

41. As alleged herein, the Debtor has knowingly and intentionally made false, inaccurate and/or misleading statements and omissions in his Schedules, SOFA and § 341 Meeting of Creditors, which he declared to be true and correct under penalty of perjury, and such false oaths were material and fraudulent.

42. Specifically, the Debtor: (i) failed to disclose and value his membership interests in various limited liability companies; (ii) failed to disclose the income he generated from his employment and/or operating the various businesses he owns and/or controls; (iii) failed to disclose the Franco Realty Bank of America account and the Navy Federal Credit Union bank account; (iv) failed to disclose rental income he received from the residential rental properties he owns; (v) failed to disclose a lawsuit he was a party to mere months prior to the petition date as well as the settlement payments due to him on account thereof; (vi) failed to disclose a gift made to an insider within a year of the Petition Date; (vii) falsely listed the Plaintiff's claim as disputed; (viii) failed to list various licenses and insurance policies he holds an interest in; and (ix) failed to list payments on an insider's debt within the one (1) year period prior to the filing of the Bankruptcy Case. Such misstatements and omissions were deliberate and intentionally fraudulent and/or reckless.

43.     By virtue of the Debtor's actions, and pursuant to § 727(a)(4)(A) of the Bankruptcy Code, the Debtor is not entitled to a discharge.

### COUNT II
### (Objection to Discharge Pursuant to 11 U.S.C. § 727(a)(2)(A) – Transfer and Concealment of Assets)

44.     The Plaintiff repeats and realleges the allegations in the preceding paragraphs as if the same were set forth more fully herein.

45.     Section 727(a)(2)(A) of the Bankruptcy Code provides that a debtor shall not receive a discharge if the debtor, with intent to hinder, delay or defraud a creditor has transferred, removed, destroyed, mutilated or concealed his or her property within one (1) year before the date of the filing of the petition.

46.     As alleged herein, the Debtor has knowingly and intentionally concealed and/or transferred his interest in property, including, but not limited to his interest in, and the income and other monies he received from his various entities including Franco Realty, Piolin Jr., LLC and Piolin II.

47.     Further, the Debtor used the funds in Franco Realty's bank account that was nominally held in a client escrow account held at Bank of America to pay for his personal and household expenses and concealed these payments, and this account from the Trustee and his creditors, including the Plaintiff.

48.     By virtue of the Debtor's actions, and pursuant to § 727(a)(2)(A) of the Bankruptcy Code, the Debtor is not entitled to a discharge.

## COUNT III
### (Objection to Dischargeability of Debt Pursuant to 11 U.S.C. § 523(a)(2)(A) – Actual Fraud)

49. The Plaintiff repeats and realleges the allegations in the preceding paragraphs as if the same were set forth more fully herein.

50. Section 523(a)(2)(A) provides that an individual debtor is not discharged from a debt for "money . . . to the extent obtained by—(A) false pretenses, a false representation, or actual fraud."

51. The term "actual fraud" includes the fraudulent transfer of assets.

52. As alleged herein, the Debtor utilized his insiders and the various limited liability companies in which he holds membership interests as conduits and transferred and concealed his assets from the Plaintiff while under an obligation to pay the Deficiency Judgment.

53. By virtue of the Debtor's actions, and pursuant to § 523(a)(2)(A) of the Bankruptcy Code, the Debtor's debt to the Plaintiff is not dischargeable.

**WHEREFORE**, the Plaintiff, Sutherland Asset I, LLC, respectfully requests that this Court enter judgment in its favor against the Debtor/Defendant, Miguel Arturo Franco, Jr., as follows:

  i. Declaring that the Debtor is not entitled to a discharge pursuant to 11 U.S.C. § 727(a)(4)(A);

  ii. Declaring that the Debtor is not entitled to a discharge pursuant to 11 U.S.C. § 727(a)(2)(A);

  iii. Declaring that the Debtor's debt to the Plaintiff is not dischargeable pursuant to 11 U.S.C § 523(a)(2)(A); and

  iv. Granting such other relief as the Court deems meet and just under the circumstances.

SUTHERLAND ASSET I, LLC,

By its attorneys,

/s/ Peter Antonelli
Peter Antonelli (ct29509)
pantonelli@curranantonelli.com
Curran Antonelli, LLP
Ten Post Office Square, Suite 800 South
Boston, MA 02215
Telephone: (617) 207-8670

Dated: November 3, 2020

**CERTIFICATE OF SERVICE**

    I, Peter Antonelli, hereby certify that on this 3rd day of November, 2020, a copy of the foregoing was filed electronically. Notice of this will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Peter Antonelli
Peter Antonelli