## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT
## HARTFORD DIVISION

| | | | |
|---|---|---|---|
| IN RE: | ) | CASE NO. | 17-21913 (JJT) |
| | ) | | |
| MIGUEL ARTURO FRANCO, JR., | ) | | |
| DEBTOR. | ) | CHAPTER | 7 |
| | ) | | |
| SUTHERLAND ASSET I, LLC, | ) | ADV. PROC. NO. | 18-02019 (JJT) |
| PLAINTIFF | ) | | |
| | ) | | |
| V. | ) | RE: ECF NOS. | 152, 187[1] |
| | ) | BR ECF NOS. | 1, 7 |
| MIGUEL ARTURO FRANCO, JR., | ) | | |
| DEFENDANT. | ) | | |
| | ) | | |

## THE COURT'S FINDING OF FACT AND CONCLUSIONS OF LAW
## AFTER TRIAL ON PLAINTIFF'S SECOND AMENDED COMPLAINT

### I.    Introduction

This matter comes before the Court on a Second Amended Complaint (ECF No. 152) filed by Sutherland Asset I, LLC ("Sutherland" or "Plaintiff") on November 3, 2020 against the Defendant, Miguel Arturo Franco Jr. ("Debtor" or "Defendant"). In its Complaint, Sutherland seeks a determination by this Court that the alleged debt owed by Mr. Franco to Sutherland is nondischargeable based on a series of alleged fraudulent statements, omissions, and other concealments made during Mr. Franco's related bankruptcy case. Sutherland asserts causes of action for false oaths under 11 U.S.C. § 727(a)(4)(A), for fraudulent transfer and concealment of assets under 11 U.S.C. § 727(a)(2)(A), and for actual fraud under 11 U.S.C. § 523(a)(2)(A).[2] Mr. Franco alleged diminished capacity as an affirmative defense to these claims.

---

[1] Citations to the docket of this Adversary Proceeding are noted by "ECF No." Citations to the docket in the related bankruptcy case (Case No. 17-21913) are noted by "BR-ECF No."

[2] Unless otherwise noted, all statutory citations refer to the Bankruptcy Code under Title 11 of the United States Code.

This case went to trial on October 20 and 27, 2021, at which the parties offered documentary evidence and live testimony.[3] Having considered the pleadings, testimony, and evidence admitted during trial, the Court's own docket and the arguments of the parties, the Court finds that the Plaintiff met its burden of proof to establish that its debt is nondischargeable under a theory of false oaths under 11 U.S.C. § 727(a)(4)(A) and fraudulent transfer and concealment of assets under 11 U.S.C. § 727(a)(2)(A). As to the Defendant's diminished capacity defense, the Court finds that the Defendant has failed to meet his burden of proof.

## II.    Jurisdiction and Venue

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and derives its authority to hear and determine this matter on reference from the District Court pursuant to 28 U.S.C. §§ 157(a) and (b)(1). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) and (J). Venue in this District is proper pursuant to 28 U.S.C. § 1409.

## III.    Procedural History

On May 24, 2018, the Plaintiff commenced this Adversary Proceeding by way of its Complaint objecting to the Defendant's discharge. ECF No. 1 (the "Original Complaint"). The Original Complaint asserted three causes of action for false oaths under 11 U.S.C. § 727(a)(4)(A), for withholding documents and records from an officer of the estate under 11 U.S.C. § 727(a)(4)(D), and for failure to keep or preserves books or records under 11 U.S.C. § 727(a)(3). Each cause of action rests on the following categories of factual allegations: the Defendant's failure to appear at his § 341 Meeting of Creditors (the "§ 341 Meeting") and produce documents to the Trustee; the Defendant's failure to adequately disclose his income and membership interests in various limited liability companies; and, the Defendant's failure to

---

[3] At trial, Sutherland elected not to proceed with the Third Count of its Second Amended Complaint related to 11 U.S.C. § 523(a)(2)(A).

disclose certain assets and other information such as bank accounts, his real estate broker license, and his liquor license.

On July 20, 2018, the Defendant filed his Answer to the Original Complaint. ECF No. 11. The Defendant denied most of the factual allegations but did specify certain instances where an asset or other information was not disclosed in one part of his petition but was disclosed in a different schedule or statement included with the petition. The Defendant also admitted to making certain omissions in the petition but stated that in some cases that the omission was an inadvertent error. Otherwise, the Defendant denied all allegations related to each specific cause of action. The Defendant also asserted an affirmative defense for failure to state a claim upon which relief may be granted.

On July 24, 2018, the Plaintiff amended its Original Complaint by adding a cause of action for fraudulent transfer and concealment of assets under 11 U.S.C. § 727(a)(2)(A) and for actual fraud under 11 U.S.C. § 523(a)(2)(A). ECF No. 12 (the "First Amended Complaint"). The Plaintiff premised the two new causes of action on the same factual allegations as the original causes of action. On August 2, 2018, the Defendant filed his Answer to the First Amended Complaint. ECF No. 14. The Defendant answered the First Amended Complaint by denying all allegations that support the two added causes of action.

In the midst of the discovery phase, and after multiple continuances of trial and failed settlement efforts, the Plaintiff filed a motion in limine to preclude admission of certain testimony concerning the Defendant's character, state of mind, and mental capacity. ECF No. 99. After a hearing on the motion in limine, the Defendant moved, on June 22, 2020, for leave to file a supplemental and amended answer and witness list to add an affirmative defense for diminished capacity and to disclose an expert witness in support of that defense. ECF No. 122. The Defendant filed his amended answer and witness list on June 23, 2020. ECF Nos. 123, 124.

That same day, the Court granted the Defendant leave to file his amended answer and witness list. ECF No. 125. The motion in limine was resolved on the record during a June 25, 2020 hearing. The Court denied the motion in limine by allowing expert testimony at the time of trial about the Defendant's state of mind.

On November 2, 2020, the Plaintiff moved for leave to file a second amended complaint to include additional facts uncovered in discovery and remove two causes of action from the operative complaint with the intent to narrow the issues before trial. ECF No. 151. On November 3, 2020, the Plaintiff filed its second amended complaint. ECF No. 152 (the "Second Amended Complaint"). At a subsequent pre-trial conference hearing, the Court granted the Plaintiff leave to amend its complaint. ECF No. 154. Plaintiff's Second Amended Complaint eliminated the causes of actions for withholding documents and records from an officer of the estate under 11 U.S.C. § 727(a)(4)(D) and for failure to keep or preserves books or records under 11 U.S.C. § 727(a)(3). The remaining causes of action relied on theories for false oaths under 11 U.S.C. § 727(a)(4)(A), for fraudulent transfer and concealment of assets under 11 U.S.C. § 727(a)(2)(A), and for actual fraud under 11 U.S.C. § 523(a)(2)(A). On February 5, 2021, the Defendant filed his answer to the Second Amended Complaint re-asserting his previous admissions and denials and adding an affirmative defense of "diminished capacity" related to his post-traumatic stress disorder (PTSD) resulting from his military service and the effects of his prescribed medication in connection with that diagnosis. ECF No. 187 (the "Answer").

On October 20 and 27, 2021, the Court held a two-day trial on the Plaintiff's Second Amended Complaint during which the parties submitted exhibits into evidence and the Defendant testified. ECF No. 229. The Defendant's expert witness, Deborah Collins-Perrica, APRN, also testified on issues related to the Defendant's diminished capacity defense. The

portion of the trial related to Ms. Collins-Perrica's testimony was conducted under seal. At the close of trial, the Court took the matter under advisement.

## IV.    Findings of Fact[4]

In accordance with Fed. R. Civ. P. 52 and Fed. R. Bankr. P. 7052, after consideration of the trial testimony and argument, the documents admitted into evidence, and examination of the official record of the instant Adversary Proceeding, the Court finds the following facts.

### A.  Preliminary Facts

1.      This Adversary Proceeding arises in and relates to the bankruptcy case of the Defendant, captioned *In re Miguel Arturo Franco, Jr.*, United States Bankruptcy Court, District of Connecticut, Case No. 17-21913-JJT (the "Bankruptcy Case").

2.      The Defendant is the Debtor in the Bankruptcy Case and is an adult individual residing at 7 Berkeley Lane, East Hartford, Connecticut 06118.

3.      The Plaintiff is a creditor in the Bankruptcy Case and is a Delaware limited liability company with an address of 1675 South Street, Suite B, Dover, Delaware 19901.

4.      The Plaintiff holds a claim against the Debtor stemming from a Commercial Guaranty granted by the Debtor in favor of the Plaintiff's predecessor-in-interest.

5.      On December 14, 2015, Judge Dubay of the Connecticut Superior Court, upon default of the Defendant, entered a foreclosure deficiency judgment in favor of the Plaintiff in the amount of $155,261.64 in a Connecticut Superior Court civil action captioned *Sutherland Asset I, LLC v. 621 Burnside, LLC, et al.*, Docket No. HHD-CV-156056875-S (the "Deficiency

---

[4] The Court's findings of the underlying facts are drawn from the parties' pleadings and trial exhibits, the docket of the Adversary Proceeding, and the record of the two-day trial held on October 20, 2021 (ECF No. 224) and October 27, 2021 (ECF No. 229). References to the audio recording of the trial will appear in the following format, respectively: Tr. 1, __, Tr. 1 SEALED, __ (for any portion of the trial on day one that was conducted under seal), and Tr. 2 __.

Judgment"). At no point did the Debtor defend himself in the civil action or timely object to the existence, validity, or enforceability of the deficiency judgment in the bankruptcy case.

### B. The Debtor's Bankruptcy Disclosures

6.      On December 19, 2017 (the "Petition Date"), the Defendant filed for relief under Chapter 7 of the Bankruptcy Code, Title 11 of the United States Code (the "Petition"). BR-ECF No. 1. Included with the Petition are the Debtor's Schedules ("Schedules") and his Statement of Financial Affairs ("SOFA"). That same day, the Debtor filed his Chapter 7 Statement of Current Monthly Income ("SCMI"). BR-ECF No. 2. The Debtor declared that the disclosures made in his Schedules, SOFA, and SCMI were true and correct under pains and penalties of perjury.

7.      The Debtor further affirmed the accuracy and completeness of these disclosures under oath at his § 341 Meeting. *See* Pl.'s Ex. 44, Tr. of § 341 Meeting. The Debtor stated on numerous occasions, while under oath, that he prepared his bankruptcy disclosures with the assistance of recognized bankruptcy counsel and that he duly reviewed these disclosures prior to their filing by his counsel. Tr. of § 341 Meeting at 8:14-21, 34:9-22.

8.      The Debtor attempted to disclose his interests in various businesses and legal entities, but he did so either in an incomplete manner, by misclassifying them in the wrong portion of his Petition and related documents, or by failing to disclose the value of his interest in each entity. In Question 19 of his Schedule A/B, the Debtor represented that he held no interests in any unincorporated businesses, including any interests in limited liability companies but represented, in Question 42, that he held a 50% interest in Piolin Restaurant II, LLC by listing it as an interest in a partnership or joint venture with a value of $0.00. The Debtor disclosed his real estate business, Franco Realty LLC, as a sole proprietorship in Question 12 of his Petition and as a limited liability company in Question 27 of his SOFA. The Debtor disclosed, in Question 9 of his SOFA, two legal actions where Piolin Jr., LLC was a named party within one

year before the Petition Date. The Debtor also disclosed, in Question 27 of his SOFA, that he held a membership interest in the following limited liability companies within four years prior to the Petition Date: Piolin Jr. LLC ("Piolin Jr."), Piolin Restaurant II LLC (Piolin II), Franco Realty Group LLC ("Franco Realty"), and 621 Burnside LLC ("621 Burnside"). The Debtor did not, however, disclose the value of his interest in Piolin Jr., Franco Realty or 621 Burnside and did not accurately disclose the value of his interest in Piolin II.

9.      The Debtor has admitted that, on the Petition Date, he held membership interests in various limited liability companies, including, but not limited to, Piolin Jr., Piolin II, Franco Realty, and 621 Burnside. Answer ¶10. The Debtor confirmed that he is the sole member of Franco Realty. Pl.'s Ex. 42, Debtor's Dep. on Sept. 15, 2019 ("Debtor's 2019 Dep.") at 20:19-22.

10.     The Debtor was also the record managing member of Piolin II on the Petition Date and has admitted, under oath, to personally preparing and filing the articles of organization for this entity with the Connecticut Secretary of State. Answer ¶11.

11.     Although the Debtor partially disclosed the existence of these membership interests and/or sole proprietorships on his Schedules or SOFA, the Debtor did not disclose the value of these interests. The Debtor provided copies of his various tax returns and bank account summaries to the Trustee in connection with the § 341 Meeting, but those documents did not necessarily establish the value of the Debtor's interests. The Debtor's 2017 partnership tax return for Piolin II showed ordinary business income at a loss of $350.00. Pl.'s Ex. 21 at 1. It is not clear what the overall value of the Debtor's interest in Piolin II was, if any, on the Petition Date. The Debtor's bank account summaries for Franco Realty also do not reveal the value of that business.

12.     In his SOFA, the Debtor represented that he received no income from employment or from operating a business during the year that the Bankruptcy Case was filed or in the two previous calendar years (*i.e.*, in 2015, 2016, and 2017). SOFA, Question 4.

13.     When questioned by Plaintiff's counsel during his deposition, however, the Debtor admitted that: (1) he owned and operated the Piolin Jr. restaurant in East Hartford, Connecticut, from which he generated income in 2015 and 2016; (2) he was the "manager" of the Beso Lounge and Restaurant, which was nominally owned by his ex-wife and from which he was paid on an hourly basis; and (3) he worked at the "Piolin Jr. Café," which was a restaurant owned by his ex-wife and for which work he was compensated. Answer ¶14.

14.     Additionally, the Debtor generated income throughout 2015, 2016, and 2017 through his real estate brokerage firm, Franco Realty. Specifically, the Debtor testified at the § 341 Meeting of Creditors that he earned commissions from the sale of properties through Franco Realty. He further testified that he deposited such commissions into Franco Realty's bank account held at Bank of America. Answer ¶15.

15.     The Debtor, however, concealed the true nature of this bank account during his § 341 Meeting and, thereafter, by holding the account out to the Trustee and his creditors as an "escrow account," formally known as an Interest on Real Estate Broker's Trust Account (IOREBTA), which he claimed was used to hold his client's deposits despite knowing that he used this account to pay personal expenses. *See* Tr. of § 341 Meeting at 26:13-27.

16.     Despite falsely claiming that this account was an "escrow account" for client funds, the Debtor used the monies in Franco Realty's IOREBTA account to pay his personal and household expenses, including for his family's cell phone bills, utilities and mortgage payments. *See* Debtor's 2019 Dep. at 99, 105, 108. Additionally, one day prior to the Petition Date, the Debtor paid his mortgage from the Franco Realty account. The Debtor further withdrew five

hundred dollars in cash two days after the Petition Date from this purported "escrow account." *See* Pl.'s Ex 24 at 18, Franco Realty IOREBTA Acct. Summ. In addition, at variance with industry custom, practice and norms, the Debtor caused 100% of the real estate commissions earned from sales by Franco Realty to be distributed to his ex-wife as wages. Tr. 1, 11:14–11:19.

17.     The Debtor did not list the Franco Realty account with Bank of America on his Schedule A/B or anywhere in his bankruptcy disclosures. *See* Franco Realty Acct. Summ.; Petition, Schedule A/B at 14. The Debtor only disclosed the existence of this account after being questioned by Plaintiff's counsel at the § 341 Meeting. *See* Answer ¶18.

18.     From December 19, 2016 through December 19, 2017 (*i.e.* the one-year period preceding the Petition Date), the Debtor withdrew a total of $56,374.22 from the Franco Realty account in the following amounts: (i) $4,162.22 in mortgage payments; (ii) $2,750.00 in utility bills; (iii) $21,850.00 in cash withdrawals; (iv) $25,262.00 in checks to the Debtor's ex-wife, Angela Espinoza; (v) $350.00 for cell phone bills; (vi) $1,750.00 in checks to the Debtor and his accountant; (vii) $250.00 in payments to "Rogo" a liquor distributor. *See* Franco Realty Acct. Summaries at 16–83.

19.     The Debtor also falsely represented on his SOFA that he received no other income, including rental income or money collected from lawsuits, during the year the Bankruptcy Case was filed or the two previous calendar years. *See* Answer ¶19.

20.     Approximately two months prior to the Petition Date, the Debtor initiated a summary process action for unpaid rent against his tenant, Miguel Gomez, and others in the Connecticut Superior Court action captioned *Franco Jr. v. Gomez, et al.* Pl.'s Ex. 39, Eviction Compl. The Debtor failed to disclose this lawsuit in Question 9 of his SOFA, but he also concealed the fact that he settled the action weeks before the Petition Date and entered into a stipulation with Mr. Gomez under which the Debtor would receive $200.00 per month in

overdue rent payments beginning December 2017 (the month in which he filed his Petition) through and including January 2019. *See* Answer ¶21.

21.     When the Trustee later questioned the Debtor during the § 341 Meeting regarding whether he was owed money by anyone, the Debtor again falsely responded "No sir." *Id*. at ¶22.

22.     In Schedule E/F, Question 4.2, the Debtor listed the Plaintiff's claim as disputed. The Debtor denied that his characterization of the claim as disputed was false. Answer ¶24. Neither the debtor, nor any other party, however, formally objected to the Plaintiff's Proof of Claim or presented evidence to assail the presumptive validity of the Deficiency Judgment.[5]

23.     In his Schedule A/B, the Debtor represented that he held no licenses of any kind. *Id.* at ¶26. In his subsequent discovery responses, however, the Debtor disclosed that he held a real estate broker license. Pl.'s Ex. 19a at Response 6, Debtor's Response to First Set of Interrogatories ("Debtor's Response to Interrog."). That real estate license was the same license he used to generate thousands of dollars in annual income, which income was surreptitiously used for his personal expenses and was omitted from the Debtor's Schedules and SOFA. In addition, despite representing that he held no licenses in his Schedule A/B, the Debtor testified at his deposition that he held a liquor license granted to him by the State of Connecticut in connection with one of his father's restaurants located in Hartford. Debtor's 2019 Dep. at 131:24–133:14. The Debtor's representation that he held no licenses on the Petition Date was therefore patently false.

---

[5] The parties disagree as to whether the Plaintiff's claim is, in fact, disputed. The Plaintiff asserts that the appeals period has run on the Deficiency Judgment. Second Am. Compl. ¶24. The Debtor denies that the characterization of the Plaintiff's claim as disputed is false, denies any legal conclusions as to whether the appeals period has run, and asserts that he believes the amount of the Deficiency Judgment was inflated by the Superior Court. Answer ¶24. Although there is a question as to whether listing the claim as disputed in the Debtor's Schedules constitutes a false oath, this issue is not material to the Court's decision. In fact, the docket of the Superior Court case shows no timely appeal or stay.

24.    The Debtor also represented on his Schedule A/B that he did not hold an interest in any insurance policies. Answer ¶28. At the § 341 Meeting, however, the Debtor testified that he did in fact hold various interests in insurance policies, including health, disability, and homeowner's insurance but only after being questioned by Plaintiff's counsel. Tr. of § 314 Meeting at 23:14–23:19, 49:3–49:5. The Debtor's representation that he did not hold an interest in any insurance policies were therefore false. Answer ¶29.

25.    In his Schedule E/F, the Debtor lists his father, Miguel Franco Sr., as a creditor with a claim in the amount of $90,000.00 pursuant to an "Equipment Business Purchase Note." Schedule E/F, Question No. 4.18. In his Question 7 of his SOFA, the Debtor represented that, within the one-year period prior to the Petition Date, he did not make a payment on a debt he owed anyone who was an insider. The Debtor's father, however, was paid approximately $3,000.00 on account of the foregoing agreement. *See* Debtor's Response to Interrog. at Response 10.

26.    In his SOFA, the Debtor represented that he gave no gifts in excess of $600.00 in value to anyone during the two-year period prior to the Petition Date. *See* Answer ¶31.

27.    The Debtor, however, testified at his deposition that, in 2017 or within one year prior to the Petition Date, he "gave" his 2006 BMW 330i to his teenage son. Debtor's 2019 Dep. at 37:17–38:15. The Debtor listed the value of the BMW 330i in Question 3.1 of Schedule A/B as $2,850.00. Whether the BMW was a gift or a transfer, as opposed to simply lending the vehicle for his son's use, the Debtor's testimony in this regard lacked consistency and credibility.

**C.  The Debtor's Transfer of the Piolin Jr. Restaurant**

28.    The Debtor testified at his deposition in this action that in or around 2016, at a time when creditors including the Plaintiff were attempting to collect debts from him, he ceased operating the Piolin Jr. restaurant located at 860 Main Street, East Hartford, Connecticut. This

restaurant was nominally titled in the name of Piolin Jr. LLC, of which the Debtor was the sole member. *See* Answer ¶33.

29.     The Debtor testified at his deposition that he closed Piolin Jr. because he "owe[ed] a lot of money," despite his inconsistent statements that this business was, by the Debtor's own admission, "doing fine" financially. Debtor's 2019 Dep. at 15:21–16:6; Answer ¶34.

30.     The Debtor further testified at his deposition that, following the closure of Piolin Jr., the owner of the building at 860 Main Street and the Debtor's ex-wife began to operate a restaurant and nightclub at this location under the name Beso Lounge and Restaurant ("Beso Lounge"). Debtor's 2019 Dep. at 15:3–18:20. The Debtor remained significantly involved in the operations of this restaurant business as its "manager" and received income on account of his services. Answer ¶35; Debtor's 2019 Dep. at 18:14–20:12.

31.     The Debtor continued to work for Beso Lounge until early 2019. Answer ¶36; Debtor's 2019 Dep. at 18:14–20:12.

32.     The Debtor also testified at his deposition that his ex-wife sold her interest in Beso Lounge for nearly $10,000.00 in 2019. Debtor's 2019 Dep. at 139. The Debtor, however, did not disclose his interest in Piolin Jr. as an asset that was transferred within two years prior to the Petition Date on his SOFA or anywhere else in his Petition. *See* SOFA Question 18.

V.    **The Court's Dispositive Conclusions of Law**

   A.  **Burden of Proof Under Section 727(a)**

33.     Section 727 governs an individual Chapter 7 debtor's discharge. "[A] central purpose of the [Bankruptcy] Code is to provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy 'a new opportunity in life with a clear field for future efforts, unhampered by the pressure and discouragement of

preexisting debt.'" *Grogan v. Garner*, 498 U.S. 279, 286 (1991) (quoting *Local Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934). For this reason, the Second Circuit has described Section 727 "as '[impos[ing] an extreme penalty for wrongdoing, which must be construed strictly against those who object to the debtor's discharge and liberally in favor of the bankrupt.'" *In re Cacioli*, 463 F.3d 229, 234 (2d Cir. 2006) (quoting *State Bank of India v. Chalasani (In re Chalasani)*, 92 F.3d 1300, 1310 (2d Cir. 1996)) (alteration in original). The objecting party (*i.e.,* the creditor) must prove the elements of Section 727 by a preponderance of the evidence. *Grogan*, 498 U.S. at 287.[6]

## B.  Count I: False Oaths Under Section 727(a)(4)(A)

34.     Section 727(a)(4)(A) states that the bankruptcy court "shall grant the debtor a discharge, unless . . . the debtor knowingly and fraudulently, in or in connection with the case . . . made a false oath or account." 11 U.S.C. § 727(a)(4)(A). To prevail under Section 727(a)(4)(A), a creditor must show that: "1) the debtor made a statement under oath; 2) the statement was false; 3) the debtor knew the statement was false; 4) the debtor made the statement with fraudulent intent; and 5) the statement related materially to the bankruptcy case." *In re Abraham*,

---

[6]     The requisite burden of proof under Section 727(a) has been the subject of much debate. In *Grogan v. Garner*, 498 U.S. 279 (1991), the Supreme Court established that the standard of proof for exceptions to discharge under Section 523(a) is the ordinary preponderance of the evidence standard. With regard to Section 727(a)(4), the Court stated, in dicta, that the legislative history of that section unequivocally established that Congress chose preponderance of the evidence over the criminal beyond a reasonable doubt standard. *Grogan v. Garner*, 498 U.S. 279, 289 (1991); *see also* H.R. Rep. No. 95-595, 384 (1977), U.S. Code Cong. & Admin. News, 5787, 6340 (1978) ("The fourth ground for denial of discharge is the commission of a bankruptcy crime, though the standard of proof is preponderance of the evidence rather than proof beyond a reasonable doubt"); S. Rep. No. 95-989, 98 (1978), U.S. Code Cong. & Admin. News, 5787, 5884 (1978) (same).

The Second Circuit has not directly addressed the issue of what standard of proof applies to Section 727(a) but has cited *Grogan* in various summary orders for the proposition that "[t]he party objecting to discharge must establish those elements by a preponderance of the evidence." *In re Pisculli*, 408 Fed. App'x. 477, 479 (2d Cir. 2011) (summary order); *see also In re Boyer*, 328 Fed. App'x. 711, 714 (2d Cir. 2009) (summary order); *In re McCormack*, No. 06-1053 (bk), 2007 WL 642945, at *2 (2d Cir. Feb. 27, 2007) (summary order). Courts within the Second Circuit have, for the most part, followed *Grogan* by applying it to Section 727 as well. *See, e.g., In re Martin*, No. 18-31636 (AMN), 2020 WL 2787681, at *9 (Bankr. D. Conn. May 28, 2020), *aff'd*, No. 3:20-CV-939 (SRU), 2021 WL 1670292 (D. Conn. Apr. 27, 2021); In *re Gonzalez*, 553 B.R. 467, 473 (Bankr. E.D.N.Y. 2016); *In re Maletta*, 159 B.R. 108, 111 (Bankr. D. Conn. 1993).

693 F. App'x. 59, 61 (2d Cir. 2017) (summary order) (quoting *In re Boyer*, 328 Fed. App'x. 711, 715 (2d Cir. 2009) (summary order)).

35.     "Statements a debtor makes on his schedules are made 'under oath' for purposes of section 727(a)(4)." *Harrington v. Kupersmith (In re Kupersmith)*, 614 B.R. 428, 439 (Bankr. D. Conn. 2020) (JAM). "Equally, statements made during an examination under oath, such as during the meeting of creditors held pursuant to Section 341, are also statements made 'under oath' for Section 727(a)(4) purposes." *Id.* "Fraudulent intent can be established by a showing of actual fraud, through evidence of the traditional badges of fraud, or by the debtor's reckless disregard for the truth of his statements." *Id.* (quoting *In re Singh*, 585 B.R. 330, 338–39 (Bankr. E.D.N.Y. 2018)) (internal quotation marks omitted); *see also D.A.N. Joint Venture, L.P. v. Cacioli (In re Cacioli)*, 285 B.R. 778, 784. "Fraudulent intent may be inferred from a series of incorrect statements and omissions contained in the schedules." *Id.* (quoting *In re Singh*, 585 B.R. at 340).

36.     As for the element of intent, "reckless indifference to the truth" in statements required in schedules or made under oath in answer to questions propounded during the debtor's examination or otherwise "is the equivalent of fraud." *Diorio v. Kreisler-Borg Constr. Co.*, 407 F.2d 1330, 1331 (2d Cir. 1969); *see also In re Kaiser*, 722 F2d 1574, 1583 n.4 (2d Cir. 1983) (quoting *In re Diodati*, 9 B.R. 804, 808 (Bankr. D. Mass. 1981)) ("the cumulative effect of all the falsehoods together evidences a pattern of reckless and cavalier disregard for the truth serious enough to supply the necessary fraudulent intent required by § 727(a)(4)(A)"); *In re Tully*, 818 F.2d 106, 112 (1st Cir. 1987). Put a slightly different way, for purposes of discharge denial:

> [T]he requirement that false oaths have been made 'fraudulently' may be satisfied in one of two ways." First, fraudulent intent may be established by circumstantial evidence, or by inference drawn from a course of conduct. Second, 'reckless indifference to the truth' constitutes the functional equivalent of fraudulent intent. Reckless

> indifference may be used to prove fraud because a debtor is unlikely
> to admit having made a deliberate misstatement, knowledge of
> falsity or fraudulent intent.

*Dranichak v. Rosetti*, 493 B.R. 370, 379 (N.D.N.Y. 2013).

37.    As for the materiality element, "[a] statement is material if it is pertinent to the discovery of assets." *In re Maletta*, 159 B.R. 108, 112 (Bankr. D. Conn. 1993). Materiality is not dependent on whether the false testimony was harmful to creditors. In re Goldman, 37 F.2d 97, 98 (2d Cir. 1930); see also *Premier Capital, LLC v. Crawford (In re Crawford)*, 841 F.3d 1, 9 (1st Cir. 1974) (quoting *In re Mascolo*, 505 F.2d 274, 278 (1st Cir. 1974)) (materiality does not depend on whether false oath was detrimental to creditors). "Thus, we need not analyze the character of an asset or whether creditors could recover from the asset." *Premier Capital*, 841 F.3d at 9. "[E]ven if each falsehood or omission considered separately may be too immaterial to warrant a denial of a discharge pursuant to § 727(a)(4)(A) . . . a multitude of discrepancies, falsehoods and omissions taken collectively . . . [may be of] sufficient materiality to bar the Debtor's discharge." *In re Maletta*, 159 B.R. at 113 (quoting *In re Sapru*, 127 B.R. 306, 315–16 (Bankr. E.D.N.Y. 1991)).

38.    A debtor's "reliance on counsel" is also not a valid defense to a denial of discharge based on a debtor's false oaths. *See In re Abraham*, 693 Fed. App'x 59, 61 (finding debtor's excuses of negligence and reliance on attorney unconvincing); *In re Kaiser*, 722 F.2d 1574, 1583 n.4 (2d Cir. 1983) (affirming denial of discharge based on debtor's false oaths when appellant's attempts to justify his misconduct by actions of others were unpersuasive); *Gobindram v. Bank of India*, 538 B.R. 629, 643 (Bankr. E.D.N.Y. 2015) ("It is well-established that a debtor's purported reliance on the advice of counsel is unreasonable when the erroneous advice should be transparently plain to the debtor.") (internal quotation marks omitted). "Furthermore, [a] debtor cannot, merely by playing ostrich and burying his head deeply enough

15

in the sand, disclaim all responsibility for statements which he has made under oath." *In re Maletta*, 159 B.R. at 112 (quoting *In re Tully*, 818 F.2d at 111).

39.     Under the aforesaid standards, the Plaintiff has abundantly established each and every element of a claim under Section 727(a)(4)(A).

### a. The Debtor Knowingly, Intentionally, or Recklessly Made Numerous False Oaths

40.     The Debtor knowingly, intentionally, or recklessly made numerous false oaths in his Schedules and SOFA. *In re Kupersmith*, 614 B.R. at 439 (statements debtor makes on schedules are made "under oath" for purposes of Section 727(a)(4)).

41.     Specifically, on his Schedules and SOFA, the Debtor: (1) failed to disclose and value his membership interests in various limited liability companies; (2) failed to disclose the income he generated from his employment and/or operating the various businesses he owns and/or controls; (3) failed to disclose his personal use of the mischaracterized Franco Realty account at Bank of America and his bank account at Navy Federal Credit Union; (4) failed to disclose pre- and post-petition rental income he received from the residential rental properties he owns; (5) failed to disclose a lawsuit he was a party to mere months prior to the petition date, as well as the payments owed to him on account of settling that lawsuit; (6) failed to disclose his "gift" made within one year prior to the Petition Date of a car to his son (an insider), which was valued at $2,500.00; (7) failed to list his real estate brokers license and liquor license, as well as his interest in various insurance policies; (8) failed to disclose payments made to his father's debt (who is also an insider) within one year prior to the Petition Date; and, (9) failed to disclose the transfer of Piolin Jr. restaurant within two years prior to the Petition Date. Sadly, the Court must conclude that such misstatements and omissions were deliberate, intentionally fraudulent, and/or made with reckless disregard for the truth. *In re Maletta*, 159 B.R. at 113 (the aggregate of a

multitude of discrepancies, falsehoods, and omissions, that by themselves may be too immaterial

to warrant discharge, may collectively be of sufficient materiality to warrant denial of discharge).

42.     In addition, the Debtor knowingly made multiple false oaths during his § 341

Meeting, which compel the denial of his discharge under Section 727(a)(4)(A). *See In re*

*Kupersmith*, 614 B.R. at 439 (statements made during § 341 meeting of creditors are made

"under oath" for purposes of Section 727(a)(4)). The bankruptcy process contemplates honest

and meaningful disclosure, not the probing extraction of such details. *See Grogan*, 498 U.S at

286–87 ("in the same breath that we have invoked this "fresh start" policy, we have been careful

to explain that the Act limits the opportunity for a completely unencumbered new beginning to

the 'honest but unfortunate debtor'").

43.     Further, the Debtor: (1) concealed the true nature of the Franco Realty Group's

Bank of America account when initially questioned about it during the § 341 Meeting; and, (2)

falsely testified that he was not owed money as of the Petition Date in response to questioning by

the Trustee, despite his settlement of the eviction action against Miguel Gomez weeks before the

Petition Date, which resulted in Mr. Gomez agreeing to pay the Debtor $200.00 per month in

back rent. These statements made under oath were knowingly and intentionally false and are

further evidence of the Debtor's willful and reckless indifference to the truth, which

unfortunately compels the denial of his discharge under Section 727(a)(4)(A). *See Diorio*, 407

F.2d at 1331 ("reckless indifference to the truth . . . is the equivalent of fraud.").

44.     Although the Debtor has claimed that his omittance of these assets from his

Schedules and SOFA, and from his testimony at the § 341 Meeting, were inadvertent, he cannot

bury his head in the sand and rely on his, or someone else's, reckless disregard for the truth to

avoid liability under Section 727(a)(4)(A). *See In re Kaiser*, 722 F.2d 1574, 1583 n.4 (2d Cir.

1983) (affirming denial of discharge based on debtor's false oaths when appellant's attempts to

justify his misconduct by actions of others were unpersuasive); *In re Maletta*, 159 B.R. at 112. Although the Debtor testified that he simply did not understand his disclosure obligations and that he relied on legal counsel, he has demonstrated the capacity to ask for meaningful direction, to make material, financial, and legal decisions, and to participate in a range of business activities.

45.     Similarly, the Debtor cannot exonerate himself of his wrongdoing and avoid the denial of his discharge under Section 727(a) by claiming that the assets he failed to disclose were not material simply because those assets had minimal value. *See In re Crawford*, 841 F.3d at 9 (materiality does not depend on whether false oath was detrimental to creditors). Accordingly, the fact that the Chapter 7 Trustee declared this case a "no-asset" case and abandoned any residual assets does not vindicate the Debtor's conduct.

46.     For the foregoing reasons, the Court therefore denies the Debtor's discharge pursuant to Section 727(a)(4)(A) on account of his reckless and casual disregard for the truth. *See Diorio*, 407 F.2d at 1331; *see also In re Tully*, 818 F.2d at 112 (concluding that dealing with factual minutiae of case would serve no purpose given ample evidence in record to support bankruptcy judge's conclusion that debtor exhibited reckless indifferent to the truth). If not knowing and intentional, the Debtor's omissions upon the filing of this case, his furtive and misleading answers to inquiries, and his failure to formally rectify his disclosures in later amendments to his SOFA or otherwise, sadly amount to cavalier and reckless behavior.

## C.  Count II: Transfer and Concealment of Assets Under Section 727(a)(2)(A)

47.     Under Section 727(a)(2)(A) of the Bankruptcy Code, a debtor's discharge may be denied when:

> (2) the Debtor, with intent to hinder, delay, or de-fraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed,

18

or has permitted to be transferred, removed, destroyed, mutilated, or concealed: (A) property of the Debtor, within one year before the date of the filing of the petition . . . .

11 U.S.C. § 727(a)(2)(A).

48.    A court may find the requisite intent through either: (1) direct or explicit proof, or (2) a preponderance of circumstantial evidence of a debtor's illicit intent, commonly known as the "badges of fraud." *Gasson v. Premier Capital, LLC (In re Gasson)*, 629 B.R. 539, 550 (S.D.N.Y. 2021) (citing *In re Boyer*, 328 Fed. App'x. at 714–15).

49.    "Intent to 'hinder' is shown where a debtor acts 'with an intent to impede or obstruct creditors,' while the intent to 'delay' is shown when the debtor acts 'with an intent to slow or postpone creditors.'" *Id.* (quoting *Mazer-Marino v. Levi (In re Levi)*, 581 B.R. 733, 745 (Bankr. S.D.N.Y. 2017)).

50.    "Courts look to 'all the surrounding facts and circumstances[,]' where a 'continuing pattern of wrongful behavior is one indication of fraudulent intent.'" *Chorches v. Xin Chen (In re Xiao)*, 608 B.R. 126, 158 (Bankr. D. Conn. 2019) (alternation in original) (quoting 6 Collier on Bankruptcy, Sec. 727.02[3][b], p. 727-18 (16th ed. 2019). "If several badges of fraud are present, there is clear and convincing evidence of actual intent." *Id.*

51.    "Courts frequently analyze certain 'badges of fraud' in order to discern circumstantial evidence as to whether a debtor acted with an intent to defraud." *In re Gasson*, 629 B.R. at 550. These badges of fraud include: "(i) lack or inadequacy of consideration; (ii) a family, friendship, or close associated relationship between the parties; (iii) the retention of position, benefit, or use of the property in question; (iv) the financial condition of the party sought to be charged both before and after the transaction in question; (v) the existence or cumulative effect of a pattern or series of transactions or course of conduct after incurring of

debt, onset of financial difficulties, or pendency of suit by creditors; and (vi) the general chronology of the events and transaction." *Id.*

> a. **The Debtor, With Conscious Intent, Transferred and Concealed his Assets During the Year Prior to the Petition Date.**

52.    During the one year prior to the Petition Date, the Debtor made numerous transfers of his assets and took steps to conceal his true interest in certain entities, from which he and his family members derived all of their income, with actual intent to hinder, delay and defraud his creditors, namely the Plaintiff. This has been proven by clear and convincing evidence by the Plaintiff.

53.    During the year prior to the Petition Date, and while the Debtor was being pursued by his creditors, the Debtor concealed and/or transferred at least $56,374.22 of his personal income in and/or through the Franco Realty Bank of America account. The Debtor's deposit of these funds into his Franco Realty account and his subsequent failure to disclose such account was, irrefutably, a purposeful and conscious concealment of those funds from the Debtor's creditors. Although the debtor testified during the § 341 Meeting that the Franco Realty account was an "escrow account" used to hold client deposits, the trial record demonstrates that the Debtor used this account to deposit and hold his income from his real estate business used said income for his personal living expenses and/or transferred indefensible or irregular payments to insiders, including his former wife, for the alleged benefit of his children.

54.    Specifically, the Debtor transferred or concealed the following monies through the Franco Realty account during the year prior to the Petition Date: (i) $4,162.22 in mortgage payments; (ii) $2,750.00 in utility bills; (iii) $21,850.00 in cash withdrawals; (iv) $25,262.00 in checks to the Debtor's ex-wife, Angela Espinoza; (v) $350.00 for cell phone bills; (vi) $1,750.00

in checks to the Debtor and his accountant; (vii) $250.00 in payments to "Rogo" a liquor

distributor. *See generally* Franco Realty Acct. Summ.

55.     In addition, at the end of 2016, *i.e.*, one year prior to the Petition Date, and after

the Plaintiff obtained the Deficiency Judgment against him, the Debtor transferred the Piolin Jr.

restaurant to his ex-wife and his long-time landlord, because he "ow[ed] a lot of money," despite

the fact that the restaurant was "doing fine," so as to shield that business and the income that it

generated for the Debtor from his creditors. Answer ¶34; Debtor's 2019 Dep. at 15:21–16:6.

56.     Afterwards, the Debtor went to work for his ex-wife and former landlord at the

Beso lounge, *i.e.*, the predecessor business to his Piolin Jr. restaurant, as the "manager" of that

restaurant. Answer ¶35.

57.     Accordingly, as a result of the Debtor's foregoing transfers and acts of

concealment of his assets during the one year prior to the Petition Date, the Court denies his

discharge pursuant to Section 727(a)(2)(A).

### D. The Claimed Lack of Intention or Capacity to Render a False Oath or Fraudulent Transfer

58.     Upon Plaintiff's satisfaction of its burden of proof by a preponderance of the

evidence on its Section 727(a) claims, the burden shifted to the Debtor to show that he lacked the

requisite fraudulent intent. *See Grogan*, 498 U.S. at 287 (the objecting party must prove the

elements of Section 727 by a preponderance of the evidence).

59.     The Debtor asserted at trial that he was impacted by so-called "diminished

capacity" generally related to PTSD resulting from the trauma of his military service and the

effects of prescribed medications. As a result, he asserted that he could not possess the fraudulent

intent required under Section 727(a). Answer ¶55. Although the Debtor uses the term

"diminished capacity," the Court understands the Debtor's use of this term to mean that he lacked capacity to render a false oath or make a fraudulent transfer.

60.    The issue of capacity, or lack of capacity, generally arises before or at the time of the filing of a debtor's petition. Section 109(h)(1) of the Bankruptcy Code requires a debtor to undergo credit counseling from an approved nonprofit budget and credit counseling agency within 180 days prior to filing the petition. 11 U.S.C. § 109(h)(1). The debtor must also file a statement with the court indicating completion of the credit counseling course. Fed. R. Bankr. P. 1007(b)(7). A debtor who fails to file the requisite statement is subject to having their case administratively closed without the entry of a discharge. Fed. R. Bankr. P. 4004(c)(1)(H).

61.    Section 109(h)(4) allows a debtor to seek a waiver of the credit counseling requirement by requesting that the court find the debtor to be incapacitated after notice and a hearing. 11 U.S.C. § 109(h)(4). The request for this waiver must be filed with the petition. Fed. R. Bankr. P. 1007(b)(3) and (c). Incapacity means the debtor "is impaired by reason of mental illness or mental deficiency so that he is incapable of realizing and making rational decisions with respect to his financial responsibilities." *Id.*

62.    In this case, the Debtor filed a Certificate of Credit Counseling indicating he had timely and successfully completed his credit counseling course. BR ECF No. 3, Certificate of Counseling. The Debtor did not attempt to claim any waiver from the credit counseling requirement under Section 109(h)(4) and did not raise incapacity as a defense until his filing of his second amended answer on February 5, 2021. *See generally* Answer, ECF No. 11; First Amended Answer, ECF No. 123; Second Amended Answer, ECF No. 187. Raising incapacity as a defense to a claim of false oath or fraudulent transfer/concealment of assets is necessarily incompatible with the Debtor's earlier assertion of capacity implied in the filing of his Certificate of Credit Counseling and his Petition.

63.    Notwithstanding this inconsistency, at trial, the Debtor elicited testimony from Deborah Collins-Perrica, APRN ("Ms. Perrica"), his treating provider at the Veteran's Administration, as an expert witness in support of his incapacity defense.



66.    Unfortunately, Ms. Perrica's testimony is legally insufficient to rebut the compelling evidence establishing that the Debtor's acts and omissions were knowing, intentional, or reckless so as to justify denial of his discharge.[8]

---

[7] Portions of this opinion that are redacted are done so in accordance with this Court's Order at ECF No. 94.

[8] The Court is not unsympathetic to the Debtor's PTSD condition, the value of his military service, or his related disabilities. Those factors, however, are insufficient to excuse the Debtor's acts, omissions, and misrepresentations inherent in his Petition.

67.    Despite the Debtor's cognitive challenges, he was indisputably able to handle a variety of business and financial affairs, including owning, operating, and participating in a number of businesses; operating an IOREBTA account for his real estate brokerage firm; commencing eviction actions against tenants who failed to pay rent, and assisting his accountant with preparing tax returns for the various legal entities he was responsible for. The evidence supporting these facts simply outweighs Ms. Perrica's equivocal expert testimony and, accordingly, does not support the defense asserted by the Debtor.

## VI.    Conclusion

For the reasons stated above, judgment is granted in favor of the Plaintiff, Sutherland Asset I LLC, as to Sections 727(a)(2)(A) and 727(a)(4)(A), and the Debtor, Miguel Arturo Franco Jr., is denied a discharge in bankruptcy. As the Plaintiff chose not to pursue its claim under Section 523 against the Debtor at trial, the Court considers that cause of action as withdrawn by the Plaintiff.

**IT IS SO ADJUDGED, ORDERED AND DECREED** at Hartford, Connecticut this 8th day of December 2021.

*James J. Tancredi*
*United States Bankruptcy Judge*
*District of Connecticut*